KING (ALLEN v.). See Case No. 226.

## Case No. 7,787.

KING et al. v. AMERICAN TRANSP. CO.

[1 Flip. 1; [1] 1 West. Law Month. 186.]

Circuit Court, N. D. Ohio. 1859.

CONSTRUCTION OF ACT OF CONGRESS OF MARCH 3, 1851 — LIABILITY OF OWNERS, ETC.—THE RULE AS TO WHAT CONSTITUTES REASONABLE CARE — JURY TO DETERMINE WHAT FACTS CONSTITUTE DUE CARE—CONTRIBUTORY NEGLIGENCE — RULE AS TO RECOVERY OF DAMAGES — PLEADINGS — MEASURE OF DAMAGE — POWER OF CONGRESS — POWER OF THE STATES—REGULATING COMMERCE —WHAT COURTS TAKE NOTICE OF.

1. By the act of congress of March 3, 1851 [9 Stat. 635], the liability of owners of any ship or vessel is limited in certain cases to the value of the interest of such owners in the same. But this does not apply to damage done by a vessel to property situate on land, such as the

1 [Reported by William Searcy Flippin, Esq., and here reprinted by permission.]

burning of a warehouse by sparks proceeding from the chimney of a steam tug. If the owners are liable in such case, the liability extends to the whole value of the property destroyed.

[Cited in Cheboygan Lumber Co. v. Delta Transp. Co. (Mich.) 58 N. W. 635.]

2. Where the injury arises from negligence or want of due care on the part of those having the management of the vessel such liability accrues, although their conduct be lawful and proper in all other respects.

3. It is a question for the jury to determine what facts constitute due care, the want of which is culpable negligence. This must depend on the circumstances of the case, an important item of which is the susceptibility to injury of the property exposed. The danger and probable extent of injury, in case it should occur, regulate or fix the degree of care that is required.

4. The rule that a plaintiff cannot recover damages if he have contributed by his own negligence to the injury, does not apply to a case where plaintiff has constructed a building of wood and of combustible materials, such as is generally used in such a building upon his own lands, though it be within five feet of a dock upon a public navigable river where steamboats are in the habit of landing.

5. A demurrer is well taken to pleas which commence by assuming to amend the whole declaration and conclude by admitting the plaintiffs' right to recover a part.

6. A plea in bar is bad, unless it goes to the whole merits of the case, and denies that the plaintiff has any cause of action. Such plea must deny in torts, as well as in contracts, either that the plaintiffs ever had the cause of action complained of; or, if it admits that they once had, insist that it no longer exists.

7. Whether this involves questions of law or fact, is not properly the subject of a plea where it goes simply to the question of damages, thereby admitting the right of the plaintiffs to recover something. It is bad for insufficiency.

8. Congress has power to legislate over navigation, as well as trade—over intercourse, as well as traffic—as to what shall constitute American vessels and the national character of the same, who shall navigate them, and may prescribe rules and regulations for the intercourse and navigation of such vessels between the different states: but, this constitutional grant of power "to regulate commerce with foreign nations and among the several states," does not confer upon congress the authority to extend its legislation throughout the entire sphere of legislation of the several states.

9. Each state has exclusive control of all matters appertaining to its own internal police. It can establish and regulate ferries; control the moving of vessels in its harbors, and enact health and inspection laws. It has the same unlimited jurisdiction over all persons and things within its limits as any foreign nation, where that jurisdiction is not surrendered or restrained by the constitution of the United States.

[Quoted in Cheboygan Lumber Co. v. Delta Transp. Co (Mich.) 58 N. W. 635.]

10. Courts have never gone so far in their interpretation of this constitutional power of congress, as to declare that it is operative upon persons and things upon land within the boundaries of state jurisdiction. It has never been controverted that the rights and duties of persons in relation to property are rightfully prescribed and controlled by the laws of the state within whose limits it is found.

11. Courts are bound to take judicial notice of public navigable water courses, of the boundaries of states and counties, and of the location of towns and cities.

[This was an action on the case by King and Baker, survivors, etc., against the American Transportation Company. The defendant pleaded the general issue, and interposed four special pleas. Plaintiffs demur to the special pleas.]

Morrison R. Waite, Baker & Collins, and Ranney, Backus & Noble, for plaintiffs.

Willey & Carey and Geo. A. Hibbard, for defendant.

WILLSON, District Judge. This is an action on the case. The plaintiffs seek to recover the value of a warehouse owned by them and situated on the bank of the Maumee river, which warehouse, it is averred, was entirely destroyed by fire on the 19th of May, 1857, by the emission of sparks from the smokepipe of the propeller Ohio. The propeller is alleged to have been the property of the defendant, and so carelessly and negligently managed by its agents and servants, and so illy constructed, as to cause the destruction and loss of said building.

The defendant has pleaded the general issue, and has also interposed four special pleas. The first special plea does not traverse the declared loss of the property by fire, or the cause of the loss as stated in the declaration, but alleges that said propeller was a vessel of 200 tons burthen and upwards, enrolled and licensed for the coasting trade, and employed in the business of commerce and navigation, and in carrying freight and passengers between ports and places in different states and territories upon the Lakes and navigable waters connecting the Lakes, and was wholly owned by the defendant. And that the grievances complained of were occasioned by and resulted from the ordinary and proper employment of said propeller, and at a time when neither the defendant nor any one of its officers, members or stockholders was on, or connected with said vessel as master, officer, or mariner thereof, and wholly without the neglect, knowledge, or privity of the owners; and it is further averred that the value of said propeller and freight at the time did not exceed ten thousand dollars.

The second special plea sets forth, that at the time of the supposed grievances, there were stored in said warehouse and destroyed by fire, 2,745 bushels of wheat belonging to Spear, Case & Dagan, and also a large quantity of other personal property, belonging to different persons, citizens of Indiana, and for the loss and value of which property the owners have brought their several actions against the defendant in the court of common pleas of Lucas county, where the same are now pending; whereupon, and by virtue of the act of congress of March 3, 1851, the liability of the defendant is alleged to be limited to the sum of $10,000, the value of said propeller and freight, to be apportioned between said plaintiffs and the owners of the other property destroyed, respectively. The third and fourth special pleas are like the

first, except that in the fourth, the propeller and freight are averred to have been of no value, and the statute of March 3, 1851, is set forth.

To these special pleas the plaintiffs have filed a demurrer. According to the well settled rules of pleading the demurrer is clearly well taken to the first three pleas. They commence by assuming to answer the whole declaration and conclude by admitting the plaintiffs' right to recover a part. A plea in bar is bad, unless it goes to the whole merits of the case and denies that the plaintiff has any cause of action. Such pleas, as well in actions for torts as in those upon contracts, must either deny that the plaintiffs ever had the cause of action complained of, or admit they once had, but insist that it no longer exists.

The measure of damages, whether involving questions of law or fact, is not properly the subject matter of a plea. And inasmuch as these pleas go simply to the question of damages, thereby admitting the plaintiffs' right to recover something for the injury complained of, they are bad for insufficiency and must be so held upon the demurrer.

The last plea is free from this technical objection. In it, we have the question fairly presented, not necessarily so much as to whether the act of congress of March 3, 1851, is operative and in force upon the waters of the Great Western Lakes, but whether it has any application to injuries done upon land within the body of a state, by vessels navigating those waters.

The third section of the act provides, "that the liability of the owner or owners of any ship or vessel, for any embezzlement, loss or destruction by the master, officers, mariners, passengers, or any other person or persons, of any property, goods or merchandise shipped or put on board of such ship or vessel, or for any loss, damage or injury by collision, or for any act, matter or thing, loss, damage or forfeiture done, occasioned or incurred, without the privity or knowledge of such owner or owners, shall in no case exceed the amount or value of the interest of such owner or owners respectively, in such ship or vessel, and her freight then pending." And by the last clause of the 7th section it is declared that "this act shall not apply to the owner or owners of any canal boat, barge or lighter, or to any vessel of any description whatsoever used in rivers or inland navigation."

This statute has for its object the limitation and restriction of the common law liability of carriers upon water; and if the act is ever to be declared operative upon the Great Lakes, it is to be done, by virtue of the constitutional provision under which congress is empowered "to regulate commerce with foreign nations and among the several states."

Under this provision, congress has power, unquestionably, to legislate over navigation as well as trade—over intercourse as well as traffic. It also has power to prescribe what shall constitute American vessels, and the na-

tional character of the seamen who shall navigate them, and it may likewise prescribe rules and regulations for the intercourse and navigation of such vessels between the different states. But this constitutional grant of power does not confer upon congress the authority to extend its legislation throughout the entire sphere of legislation of the several states.

Each state has exclusive control over all matters pertaining to its own internal police. It can establish and regulate ferries across its rivers—control the moving of vessels in harbors within its borders, and enact health and inspection laws which, by quarantine or otherwise, may operate on persons brought within its jurisdiction in the course of commercial operations. The supreme court of the United States in the case of City of New York v. Milne, 11 Pet. [36 U. S.] 139, broadly declared the doctrine, that a state has the same undeniable and unlimited jurisdiction over all persons and things within its territorial limits, as any foreign nation, where that jurisdiction is not surrendered or restrained by the constitution of the United States. That by virtue of this, it is not only the right, but the bounden and solemn duty of a state, to advance the safety, happiness and prosperity of its people, and to provide for its general welfare, by any and every act of legislation, or by the recognition of the principles of the common law, which it may deem to be conducive to these ends, where the power over the particular subject or the manner of its exercise is not restrained by, or surrendered to, the federal government. And that all those powers which relate mainly to municipal law, or what may, perhaps, more properly be called internal police, are not thus restrained and surrendered, and that consequently, in relation to these, the authority of a state is complete, unqualified and exclusive.

Nor is this doctrine at all weakened or impugned by the decision of the supreme court in Gibbons v. Ogden, 9 Wheat. [22 U. S.] 1. The point ruled there was, that certain acts of the New York legislature, granting to individuals the exclusive navigation of all the waters within the state by boats propelled by steam, were repugnant to the clause of the constitution of the United States which authorizes congress to regulate commerce. And it was held, that the legal effect of those acts of the legislature of New York, was to prohibit vessels licensed according to the laws of the United States for carrying on the coasting trade, from navigating the waters of the state of New York by means of steam. And that, as the exclusive right of navigating these waters, granted by the law of the state, if suffered to operate, would be in conflict with the right of the vessel licensed under the act of congress to navigate the same waters; therefore, the act of the state of New York should be adjudged void. In that case, the subject on which the state law operated was

a vessel claiming the right of navigation, a right which is embraced in the power to regulate commerce, and the place of its operation, was the public navigable waters of the United States, over which the power of congress to regulate commerce was held to extend.

But the courts have never gone so far in ·their interpretation of the constitutional power of congress to regulate commerce, as to ·declare that power operative upon persons ;and things upon land within the boundaries ·of state jurisdiction, nor has the principle ·ever been controverted, that the rights and ·duties of persons in relation to property are rightfully prescribed and controlled by the laws of the state within whose territorial limits it is found.

There can be no question, then, that the powers reserved to the several states extend to all the objects which, in the ordinary course of affairs, concern property and the rights of property of individuals, as well as to the internal order, improvement and prosperity of the state.

The state of Ohio lacks an essential element of sovereignty, if it has not within its own territorial jurisdiction, the power to regulate the rights pertaining to real property, and the kinds of redress and remedies for injuries done to it. Such rights and remedies must of necessity be governed by the lex rei sitae. This is a principle of the common law, and has ever been adopted by the courts of England, and of this country, to its fullest extent; so that the legal maxim has become recognized everywhere "ut immobilia statutis loci regantur ubi sitae."

Entertaining these views of the law, we do not deem it necessary, in determining the sufficiency or insufficiency of the fourth special plea, to consider the question which has been so ably argued by counsel, as to whether the act of congress of March 3, 1851, applies to the waters of the Great Western Lakes. But granting, for the present purposes, that it does so apply, the question is, has it any application to the case made by the plaintiffs' declaration?

Courts are bound to take judicial notice of the public navigable water courses of the country; of the territorial boundaries of states and counties, and of the location of towns and cities. The pleadings, then, present these simple, though important facts. The warehouse in question was located in the city of Toledo, within the body of the county of Lucas, and upon the bank of the Maumee river, eight or ten miles distant from Lake Erie. It took fire and burned from sparks emitted from the smokepipe of a steam vessel used in the navigation of the Maumee river, and was entirely destroyed. It may be urged with great force, that the case comes within the exception of the 7th section of the act, as the propeller Ohio was a vessel used in a river when and where the injury was done. But we do not put our decision upon that ground. It is sufficient to say that the

case is one over which congress has no power to legislate. The rights of the parties and the remedies incident to those rights are to be governed and determined by ·the local law. The demurrer to the 4th special plea, is therefore sustained.

This cause was afterwards tried by a jury upon the issues raised by the pleadings.

WILLSON, District Judge, after stating to the jury that the cause was one of magnitude and involved serious consequences, said: The action is brought by the plaintiffs to recover the value of a grain warehouse, alleged to have been destroyed by the emission of sparks from the chimney of the propeller Ohio.

There are some material facts in the case, which are not controverted. These are, that the plaintiffs owned the warehouse in question, that it was burned on the 19th of May, 1857, and was of the value of $38,700; that said propeller was owned by the defendant, and was, at the time of the disaster, under the management and control of the servants and agents of the defendant. These are conceded facts.

The first question in dispute, is, in relation to the cause of the loss. Was the destruction of the building caused by sparks from the smokepipe of the propeller? This inquiry meets you on the threshold of the case, and should be first disposed of, because if the proofs show the loss to have been occasioned by any other cause or instrumentality than that set forth in the plaintiffs' declaration, you will end the case by simply returning a verdict for the defendant. But should you come to the opposite conclusion, then you will inquire and determine: (1) Whether the loss arose from the carelessness, negligence or improper management of said vessel, or the fires produced in and upon it, on the part of the agents and servants of the defendant; and (2) whether the injury was occasioned by the improper or insufficient construction of the smokepipe of the vessel.

If you find affirmatively on either of these propositions, a verdict should be returned for the plaintiffs, in a sum equal to the agreed value of the warehouse at the time of its destruction, and interest on that amount from May 19, 1857. This action, gentlemen, if sustained at all, must be upon the ground of the negligence of the defendant or its agents. This is the foundation of the suit.

The Maumee river is a public highway, and its navigation, whether by steam or sail vessels, is free to all persons and associations of persons. The right which the public have to its use, is nothing more nor less than the right in any other public highway.

Its navigation, for commercial purposes, is in itself lawful. Nor does an action lie for a reasonable use of this right, though it be to the injury of another. The rule of law is, that for a lawful use of his own property or exercise of his own rights, a man is not

answerable in damages, unless on proof of negligence; as if his house gets on fire, without his neglect or default, and burn his neighbor's, no action lies against him, notwithstanding the fire originated in his own house, because it is lawful for him to keep a fire in his own house. So, if the defendant's propeller, while engaged in the prosecution of its lawful business, and lying at the plaintiffs' dock, should take fire by unavoidable accident, and communicate the fire to the plaintiffs' warehouse and consume it, the casualty would be one for which the plaintiffs could have no redress. The vessel lying at the dock, in such a case, is not at fault. The act of itself is lawful, it being incident to its legitimate business; nor could the accident of the fire in such a case, have been foreseen and provided against by ordinary prudence.

But, on the contrary, lawful acts may be performed in such a manner, and with so much carelessness and negligence, as to injure others; and when any man or association of men, either by themselves or their servants, thus act without regard to the rights of others, they are responsible in damages for such acts. This is illustrated in the common cases of running down vessels at sea and carriages upon land, where the injury arises from a want of skill or from negligence of the delinquent party or his employees.

If in this case, the loss occurred by carelessness and want of diligence on the part of those in charge of the propeller, it is no answer to say, that the plaintiffs' warehouse was composed of wood, and the combustible materials ordinarily used in such buildings, or that it was in an exposed situation. If they erected the building on their own land, they had a right to use it in any manner or for any purpose which was lawful. They had as good a right thus to build and use it, as the defendant had to navigate the river with a propeller. In erecting such a warehouse upon the dock, and using it for commercial purposes, they took the risks of unavoidable accidents simply, but not the risk of another's negligence. As was truly said by the court in Cook v. Champlain Transportation Co. [1 Denio. 100]: "It would be a startling principle, indeed, that a building placed in an exposed position on one's own land, is beyond the protection of the law." Although there is force in the argument of counsel, that equity and good conscience demand, that any degree of carelessness and improvidence on the part of the plaintiffs. concurring with the negligence of the defendant, should preclude a recovery by the former; yet, after a careful examination of the authorities, I am constrained to say that no well considered case sustains that position. The real question for the jury, then, on this branch of the case. is, did the agents and servants of the defendant so negligently and carelessly manage the propeller and its fires, as to produce the injury complained of?

If so, the defendant is chargeable with the consequences, and must respond in damages. It should be observed, that the plaintiffs here declare for negligence only. Had they stated in their declaration, that the act complained of was done maliciously, or in the prosecution of an unlawful business, it would then have been a case of malfeasance, an injury distinct in its nature from this. Negligence is the gist of this action. Nevertheless, it is a rule of law, that the proof of the injury must conform, in substance, to the statements in the declaration.

And here arises the question of presumptive negligence, assuming the fact is established, that the fire was communicated from the vessel's chimney to the building. Is negligence to be presumed on proof of that fact? We are satisfied that the court cannot presume negligence as a conclusion of law, though the jury may infer it as a matter of fact. Strictly speaking, the burden of proof is not changed. It is for the plaintiffs to prove the negligence; and this may be done by showing, not necessarily a single positive act, wrong in itself, but any act or a variety of acts and circumstances, which shall go to establish the want of skill in managing the vessel, or improper exposure of fire from its chimney to a high wind in close proximity to the building, and blowing directly upon it. All such and similar facts and circumstances may be taken into account by the jury; and it is solely for the jury to infer negligence or the contrary, as the facts and circumstances may demand that inference.

Those in charge of the propeller were bound to exercise reasonable care and diligence to avoid injury to others. "Reasonable care" is that which is required of those who have the management of steam vessels in all cases. The law cannot prescribe the specific acts, which in any one case, must depend upon the circumstances of that particular case. Those precautions which would be reasonable under some circumstances, might not be so in others. For instance, a steam craft which emits sparks from its chimney, that might endanger the safety of an ordinary wood building, could approach and emit such sparks upon a fire proof building with impunity, and not be obnoxious to the charge of a want of reasonable care.

What is reasonable care in the particular case is not to be determined by the opinion of experts. It is solely for the jury to say. from all the proofs, whether or not those in charge of the vessel did those things which constitute reasonable care. If they exercised all proper caution and circumspection. and did those things which a man of ordinary prudence, placed in those particular circumstances. would have done, they did all the law required of them. That is the

extent of the rule, and therefore if such care and prudence were exercised in this case, and the fire was so produced, the disaster is one which implies no liability upon the defendant. But I apprehend negligence as contradistinguished from reasonable care is fully understood by the jury, and needs no further comment or illustration.

The only remaining branch of the case relates to the allegation in the plaintiffs' declaration, that the Ohio's smokepipe was defectively constructed; and that such defect of construction contributed to the disaster. It is insisted that ordinary care demanded a "spark catcher" upon the smokepipe, which appendage the owners of the Ohio failed to provide.

The question is, did ordinary prudence in the use of the propeller require such an adjustment to the smokepipe? If propellers had been in use, like sail vessels, from time immemorial, ordinary care in the construction of their chimneys would be a fact to be ascertained like any other established practice or custom. Then, what was ordinarily done in the construction of propellers in that particular, would be the test of what is required in such construction.

But if, to prevent the emission of sparks, no long and well established mode of constructing a propeller's machinery exists, then, and in that case, what is termed "usual care" is not the proper test, because from the nature of things no such test can be applied.

Whether or not the Ohio was in fault for dispensing with the use of a "spark catcher" depends upon the necessity demanding its use. Its absence does not, of itself, necessarily imply fault. To prevent a dangerous emission of igneous matter it was competent for the owners of the propeller to resort to this or any other lawful means to accomplish the object. If the propeller had a double return drop flue boiler, with a damper, which (when closed) prevented the escape of sparks from the chimney, the owners certainly had a right to adopt this mode of construction.

But whether this mode accomplishes the object, or failing, whether any other mode should have been resorted to, and, if so, what, is for the jury to say. And here the rule of "reasonable care" again applies, to its full extent. By it you are to test the sufficiency of the propeller's machinery to prevent the escape of fire which might prove dangerous to others. This is purely a question of fact, within the province of the jury to determine, and upon whose duties the court cannot trench.

With these rules for your government, you will take the case and dispose of it according to the evidence.